# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HEATHER HARDEE-GUERRA,** : | **CIVIL ACTION** |
| : | |
| **Plaintiff,** : | |
| : | |
| v. : | **NO. 09-1547** |
| : | |
| **SHIRE PHARMACEUTICALS,** : | |
| : | |
| **Defendant.** : | |

**DuBOIS, J.**                                                                                             **December 18, 2009**

## **M E M O R A N D U M**

### I. INTRODUCTION

This is a discrimination and breach of contract case arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, the Pennsylvania Human Rights Act, 43 P.S. § 951 et seq., 29 U.S.C. § 1001 et seq. of the Employment Retirement Income Security Act ("ERISA"), and Pennsylvania common law of contract. Plaintiff claims that defendant terminated her employment based on her pregnancy, in violation of federal law and in breach of a contact between the parties, and that defendant improperly denied her ERISA benefits. Presently before the Court is Defendant's Motion to Dismiss Counts IV, V, and VI of the First Amended Complaint, alleging breach of contract, detrimental reliance, and ERISA violations, respectively. For the reasons set forth below, the Court grants the motion as to Count V and Count VI of the First Amended Complaint and dismisses those counts, but denies the motion as to Count IV.

Because the issues which led the Court to dismiss Count V and Count VI were raised in

-1-

defendant's first motion to dismiss, and plaintiff thereafter filed the First Amended Complaint in an effort to address all such issues, leave to file another complaint will not be granted.

## II. BACKGROUND[1]

On September 1, 2006, plaintiff interviewed with defendant's representatives and was offered a job as Recruitment Coordinator. (Am. Compl. ¶ 7.) Defendant made an oral offer of "the terms and conditions of the position," including the rate of pay and the duration of the employment, in response to which plaintiff communicated her oral acceptance. (Am. Compl. ¶ 8.) Matterhouse Contract Staffing ("Matterhouse"), a company used by plaintiff as her "payroll coordinator,"[2] subsequently authored a written contract which detailed the terms of the oral agreement between plaintiff and defendant. (Am. Compl. ¶¶ 9-10.) The document, entitled "Statement of Work," was issued by Matterhouse to defendant "in accordance with the Client Agreement... between Matterhouse and [defendant]," and was signed only by a principal of Matterhouse on September 8, 2006.[3] (Def.'s Mot., Ex. C.) The document provided that plaintiff would work for defendant 40 hours a week, specified hourly and overtime billing rates for plaintiff's work, and designated a term

---

[1] The facts are taken from the First Amended Complaint and the written agreements attached to defendant's motion, and are presented in the light most favorable to plaintiff. In its factual analysis, the court may "consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). "Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control." ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 n. 8 (3d Cir. 1994); see also Jones v. ABN AMRO Mortgage Group, Inc., 551 F. Supp. 2d 400, 409 (E.D. Pa. 2008).

[2] As defendant points out, plaintiff had a written agreement with Matterhouse, which was executed in January 2006, and signed by plaintiff and a Matterhouse representative. (Def's Mot., Ex. A.) That agreement contemplated that plaintiff would provide services to defendant from November 27, 2006 to September 30, 2007, and expressly stated that plaintiff was an "employee" of Matterhouse. (Def's Mot., Ex. A.)

[3] "Client Agreement" refers to the "Client Services Agreement" attached to defendant's motion as Exhibit B. (Def's Mot., Ex. B.) That agreement was executed between Matterhouse and defendant in June 2006, and is signed by representatives of both companies. (Def's Mot., Ex. B.) The agreement set out general terms relating to the provision of staffing services to defendant by Matterhouse. (Def's Mot., Ex. B.)

of employment beginning on September 11, 2006 and ending on January 15, 2007. (Def.'s Mot., Ex. C.) The document further stated that the "staffing relationship" would continue unless "one party gives the other party written notice of termination." (Def.'s Mot., Ex. C.)

Plaintiff began work on September 11, 2006, and was "supervised directly by defendant's employees," including Gina Meloni, Director of Recruitment. (Am. Compl. ¶ 11.) She was "fully integrated into defendant's workforce," insofar as she "used defendant's equipment... requested time off and vacation time from defendant, and her hours of work and manner in which her work was performed was controlled by defendant." (Am. Compl. ¶ 11.) Eventually, plaintiff was given a promotion and a corresponding pay raise, the terms of which were communicated directly to plaintiff by defendant. (Am. Compl. ¶ 15.)

In October 2006, plaintiff made plans to move out of state, and communicated those plans to Gina Meloni. (Am. Compl. ¶ 16.) In response, Meloni began "approaching [p]laintiff about a second employment contract and about becoming a permanent employee." (Am. Compl. ¶ 16.) Based on Meloni's representations, plaintiff changed her mind about moving, and instead purchased a house locally and decided to "pursue advancement with defendant." (Am. Compl. ¶ 16.)

In January 2007, plaintiff discovered that she was pregnant and advised defendant of her pregnancy.[4] (Am. Compl. ¶ 17.) Defendant's representatives advised plaintiff that defendant would renew plaintiff's contract to end on her estimated due date of September 30, 2007, and that the contract would provide for a pay increase in conjunction with her added responsibilities. (Am. Compl. ¶ 19.) Again, defendant orally communicated the terms of the contract to plaintiff, and

---

[4] While the First Amended Complaint states that plaintiff learned that she was pregnant in January 2007, plaintiff's response to defendant's motion to dismiss asserts that plaintiff became aware of her pregnancy on December 25, 2006. (Pl.'s Resp. 4.)

plaintiff agreed to those terms. (Am. Compl. ¶ 19.) The agreement was conveyed to Matterhouse, which authored a second contract, providing for higher billing rates for plaintiff's work and an end date in September 2007.[5] (Am. Compl. ¶ 20.) Matterhouse did not "negotiate the terms of this contract with [p]laintiff." (Am. Compl. ¶ 20.) The contract was "merely a written confirmation of the terms previously entered into by and between [d]efendant and [p]laintiff." (Am. Compl. ¶ 20.)

From June 4, 2007 to June 8, 2007, plaintiff was absent from work due to complications with her pregnancy. (Am. Compl. ¶ 22.) On June 7, 2007, defendant posted an opening for plaintiff's position. (Am. Compl. ¶ 23.) When plaintiff returned to work on June 11, 2007, defendant advised plaintiff that her position had been offered to another employee, and that plaintiff was being demoted due to concerns about her pregnancy. (Am. Compl. ¶¶ 24-26.) On June 19, 2007, plaintiff was terminated by representatives of defendant. (Am. Compl. ¶ 27.)

During the time that she worked with defendant, plaintiff requested to participate in defendant's employee benefits (ERISA) plan – available to all employees who regularly worked more than 30 hours per week. Her request was denied on several occasions. (Am. Compl. ¶¶ 12, 13, 18, 46, 47.)

## III. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion. In

---

[5] The First Amended Complaint alleges that the document provided for an end date of September 30, 2007. (Am. Compl. ¶ 20.) However, the Statement of Work attached to defendant's motion as Exhibit D indicates an approximate end date of September 15, 2007. (Def.'s Mot., Ex. D.) Like the first Statement of Work, described *supra*, the document was issued to defendant by Matterhouse "in accordance with the Client Agreement... between Matterhouse and [defendant]" and was signed only by a principal of Matterhouse on December 28, 2006. (Def.'s Mot., Ex. D.) The document further provided that the staffing relationship could be terminated by either party upon written notice. (Def.'s Mot., Ex. D.)

analyzing a motion to dismiss pursuant to Rule 12(b)(6), the Court "accept[s] all factual allegations as true, [and] construe[s] the complaint in the light most favorable to the plaintiff...." Phillips v. County of Allegheny, 515 F.3d 224, 231, 233 (3d Cir. 2008) (internal quotations omitted).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level....'" Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). To satisfy the plausibility standard, a plaintiff's allegations must show that defendant's liability is more than "a sheer possibility." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

In Twombly, the Supreme Court utilized a "two-pronged approach" which it later formalized in Iqbal. Iqbal, 129 S. Ct. at 1950; Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Under this approach, a district court first identifies those factual allegations which constitute nothing more than "legal conclusions" or "naked assertions." Twombly, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded. Iqbal, 129 S. Ct. at 1950. The court then assesses "the 'nub' of the plaintiff['s] complaint – the well-pleaded, nonconclusory factual allegation[s]... to determine" whether it states a plausible claim for relief. Id.

**IV. DISCUSSION**

    **A. Count IV – Breach of Contract**

To state a claim for breach of contract, Pennsylvania law requires a plaintiff to establish: "(1)

the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003) (citing CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). "It is fundamental contract law that one cannot be liable for a breach of contract unless one is a party to that contract." Electron Energy Corp. v. Short, 597 A.2d 175, 177 (Pa. Super. Ct. 1991) (citing Viso v. Werner, 369 A.2d 1185 (Pa. 1977)).

Whether an oral employment contract exists between parties is a "mixed question of fact and law." Scully v. US WATS, Inc., 238 F.3d 497, 505 (3d Cir. 2001). Generally, Pennsylvania "presumes all employment to be at-will." Id. (citing Geary v. U.S. Steel Corp., 319 A.2d 174, 176 (Pa. 1974); Scullion v. EMECO Indus., Inc., 580 A.2d 1356, 1358 (Pa. Super. Ct. 1990)). "The party attempting to overcome the presumption must show clear and precise evidence of an oral employment contract for a definite term. Evidence of a subjective expectation of a guaranteed employment period, based on employer practices or vague employer superlatives, is insufficient." Scully, 238 F.3d at 505 (internal citations omitted).

Defendant argues that plaintiff's breach of contract claim should be dismissed because plaintiff has not properly alleged the existence of any employment contract between plaintiff and defendant. Defendant attaches to its motion several written agreements between various parties, none of which purport to represent a direct agreement between plaintiff and defendant. Specifically, defendant provides the following four documents: (1) an agreement between a Matterhouse principal and plaintiff, dated December 14, 2005 and signed by plaintiff and the Matterhouse principal on

January 3, 2006,[6] which sets forth the terms of plaintiff's relationship with Matterhouse and contemplates plaintiff's work with defendant for the period of November 26, 2006 to September 30, 2007; (2) a Client Services Agreement, executed by defendant's Recruitment Manager and a Matterhouse principal on June 7, 2006, which sets forth the general terms of Matterhouse's provision of staffing services to defendant; (3) a Statement of Work issued to defendant by Matterhouse, signed by a Matterhouse principal on September 8, 2006, which sets forth the terms of Matterhouse's provision of plaintiff's services to defendant between September 11, 2006 and January 15, 2007; and (4) a Statement of Work issued to defendant by Matterhouse, signed by a Matterhouse principal on December 28, 2006, which sets forth the terms of Matterhouse's provision of plaintiff's services to defendant between November 26, 2006 and September 15, 2007.

While it appears that a written contract between plaintiff and defendant may not exist, plaintiff avers that she and defendant entered into oral contracts. Specifically, plaintiff states in the First Amended Complaint that on dates in September 2006 and January 2007, defendant made two separate oral employment offers to plaintiff – including such terms as her rate of pay, her duration of employment and her position title – both of which plaintiff accepted. (Am. Compl. ¶¶ 7, 8, 19.) Thus, plaintiff has alleged sufficient facts to demonstrate the existence of an employment contract with a definite term, as opposed to an at-will contract, between the parties. Plaintiff has further asserted that she was terminated in violation of her oral contracts with defendant, and that she suffered resultant damages in the form of "loss of her employment, earnings, and other employment benefits, and lost wages and opportunity." (Am. Compl. ¶¶ 27, 36.) Plaintiff has therefore alleged

---

[6] As defendant notes in its reply brief, it appears that plaintiff contends that her signature on this document is misdated as "1/3/06" and should be dated "1/3/07." (Pl.'s Resp. 4, 9, 10; Def.'s Reply Br. 1 n. 1.)

sufficient facts to state a breach of contract claim that is plausible on its face. See Ware, 322 F.3d at 225.

Defendant cites several cases from the Eastern District of Pennsylvania to support its argument that it cannot be liable for a contract to which it was not a party. However, those cases are factually distinct from the case at bar. In Surya Systems, Inc. v. Sunku, the plaintiff staffing company sought to assert a breach of contract claim against the defendant company (Wipro) with which plaintiff had placed a temporary employee (Sunku). No. 05-146, 2005 WL 1514225, at *1 (E.D. Pa. June 24, 2005). The court held that Wipro could not be charged with breach of contract, since it was not a party to plaintiff's contract with Sunku, and "only a party to a contract can be charged which its breach." Id. at *2. Similarly, in Sheller, Ludwig & Sheller P.C. v. Equitrac the court held that, having failed to establish the existence of a contract to which defendant was a party, plaintiff could not assert a breach of contract claim against defendant. No. 07-2310, 2008 WL 2370826, at *3 (E.D. Pa. June 9, 2008). Unlike these cases, however, plaintiff in the instant case has alleged the existence of a contract to which defendant was a party, albeit an oral rather than a written contract.

Defendant further argues that the parol evidence rule would preclude evidence of any oral employment agreement between the parties, given that a written agreement was subsequently executed which addressed the terms of plaintiff's work with defendant. The parol evidence rule under Pennsylvania law provides that "when parties to a contract have reduced their agreement to writing, that writing will be the sole evidence of their agreement, and parol evidence may not be admitted to vary the terms of the contract in absence of fraud, accident, or mistake." Hershey Foods Corp. V. Ralph Chapek, Inc., 828 F.2d 989, 994 (3d Cir. 1987). Thus, "[a]ll preliminary

negotiations, conversations and verbal agreements are merged in and superceded by the subsequent written contract...." Id. (quoting Scott v. Bryn Mawr Arms, Inc., 312 A.2d 592, 594 (Pa. 1973)). However, "[t]he parol evidence rule is not applicable if the parties did not intend a written contract to set forth their full agreement." Mellon Bank Corp. v. First Union Real Estate Equity and Mortgage Invs., 951 F.2d 1399 (3d Cir. 1991) (citing Gianni v. R. Russel & Co., 126 A. 791, 792 (Pa. 1924))

In line with this reasoning, the Third Circuit has held that the parol evidence rule does not bar evidence of an oral agreement between two parties where there was no written agreement between those parties, despite the existence of a related written agreement between one of the two parties and a third party. See Mellon Bank Corp., 951 F.2d at 1407 ("the parol evidence rule did not bar evidence of [A]'s oral promise to [B] because there was no written agreement between [A] and [B]") (summarizing Wood v. R.R. Donnelley & Sons Co., 888 F.2d 313, 318 (3d Cir. 1989)); Ralph Chapek, Inc., 828 F.2d at 994 ("the writing between B and C '... was not intended to, and did not properly, state the full agreement between [A and B]. Consequently, it was permissible to receive parol testimony...'") (quoting Potoczny v. Dydek, 162 A.2d 70, 74 (Pa. Super. Ct. 1960)) (brackets added in Ralph Chapek, Inc.); Roberts v. Cauffiel, 128 A. 670, 671 (Pa. 1925). Notwithstanding the existence of written agreements between plaintiff and Matterhouse, and between defendant and Matterhouse, the Court will not apply the parol evidence rule to dismiss plaintiff's claim for breach of an oral contract by defendant, in the absence of a written agreement between plaintiff and defendant.

The defendant also moves for dismissal of plaintiff's claims for breach of implied contract and breach of a duty of good faith and fair dealing in Count IV of the First Amended Complaint,

based on the absence of a contract between plaintiff and defendant. For the reasons described above, that part of the motion is denied.

### B. Count V – Detrimental Reliance/Promissory Estoppel

"Detrimental reliance is another name for promissory estoppel." Travers v. Cameron County Sch. Dist., 544 A.2d 547, 550 (Pa. Commw. Ct. 1988). Under Pennsylvania law, to state a claim for detrimental reliance a plaintiff must establish: "(1) a promise to a promisee, (2) which the promisor should reasonably expect will induce action by the promisee, (3) which does induce such action, and (4) which should be enforced to prevent injustice to the promisee." C & K Petroleum Prod., Inc. v. Equibank, 839 F.2d 188, 192 (3d Cir. 1988); see also Restatement (Second) of Contracts § 90 (setting forth the elements of promissory estoppel claim). "The first essential element of promissory estoppel requires an express promise between the promisor and promisee." Burton Imaging Group v. Toys "R" Us, Inc., 502 F. Supp. 2d 434, 439 (E.D. Pa. 2007). "[T]he doctrine does not provide a basis for relief when... a promise is absent." Banas v. Matthews Int'l Corp., 502 A.2d 637, 648 n. 12 (Pa. Super. Ct. 1985). Nor may an action for promissory estoppel be based on "a broad and vague implied promise." C & K Petroleum Prod., 839 F.2d at 192.

While plaintiff alleges that she took action in response to certain statements made by defendant's representative, she fails to allege an actual promise which induced that action. (Am. Compl. ¶ 16.) In support of her claim of detrimental reliance, plaintiff states that she cancelled her plans to move out-of-state to "pursue advancement with [d]efendant" after "Ms. Meloni began *approaching* [p]laintiff about a second employment contract and about becoming a permanent employee." (Am. Compl. ¶ 16) (emphasis added). Even construed in a light most favorable to plaintiff, the allegation that Meloni simply began "approaching" plaintiff cannot satisfy the first

-10-

element of detrimental reliance, the existence of a promise. See Burton Imaging Group, 502 F. Supp. 2d at 439 (statement by employer to employee that "we're going to move ahead with you" insufficient to qualify as promise, because it did not express intent of parties with reasonable certainty); Bereswill v. Corestates Fin. Corp., No. 88-3329, 1989 WL 16238, at *2 (E.D. Pa. Feb. 23, 1989); Ankerstjerne v. Schlumberger Ltd., No. 03-CV-3607, 2004 WL 1068806, at *5-*6 (E.D. Pa. May 12, 2004); Brunson Commc'ns, Inc. v. Arbitron, Inc., 239 F. Supp. 2d 550, 579-80 (E.D. Pa. 2002); Holewinski v. Children's Hosp. of Pittsburgh, 649 A.2d 712, 714 (Pa. Super. Ct. 1994). Therefore, plaintiff does not allege facts sufficient to state a plausible claim of detrimental reliance, and Count V of the First Amended Complaint must be dismissed.

**C. Count VI – ERISA Claim**

"An ERISA beneficiary may bring a civil action to 'recover benefits due to him under the terms of his plan, to enforce his rights under the terms of his plan, or to clarify his rights to future benefits under the terms of the plan....'" Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 249 (3d Cir. 2002) (quoting 29 U.S.C. § 1132(a)(1)(B)). It is well-established that a plaintiff must exhaust her administrative remedies before seeking judicial relief under ERISA. See Id.; Berger v. Edgewater Steel Co., 911 F.2d 911, 916 (3d Cir. 1990); Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3d Cir. 1990); Wolf v. Nat'l Shopmen Pension Fund, 728 F.2d 182, 185 (3d Cir.1984). "An ERISA claim is 'subject to dismissal if it does not plead or otherwise deal with the issue of exhaustion.'" Schirmer v. Principal Life Ins. Co., No. 08-cv-2406, 2008 WL 4787568, at *3 (E.D. Pa. Oct. 29, 2008) (quoting Balmat v. Certainteed Corp., No. 04-2505, 2004 WL 2861873, at *3 (E.D. Pa. Dec. 9, 2004)); Campbell v. Prudential Ins. Co. of Am., No. 01-5229, 2002 WL 462085, at *2 (E.D. Pa. March 25, 2002). However, a plaintiff is "excused from exhausting administrative procedures under

ERISA if it would be futile to do so." Harrow, 279 F.3d at 249; see also Berger, 911 F.2d at 916. In order to merit waiver of the exhaustion requirement, a plaintiff must provide a "clear and positive showing of futility." Harrow, 279 F.3d at 249 (quoting Brown v. Cont'l Baking Co., 891 F. Supp. 238, 241 (E.D. Pa. 1995)).

Plaintiff has failed to demonstrate the required exhaustion of administrative procedures. As defendant points out, the First Amended Complaint contains no information about which plan plaintiff sought to enroll in, "whether she submitted a claim for benefits under the plan, whether the plan featured any appeal procedures, or whether [p]laintiff exercised her appeal rights." (Def.'s Mot. 18.) Nor does plaintiff allege any facts to support her claim that it would have been futile to appeal her denial of benefits through the administrative process. In Harrow, the Third Circuit concluded that plaintiff did not qualify for the futility exception, where his only attempt at an appeal, before filing suit, was a single telephone call to the plan administrator. 279 F.3d at 251-52. In this case, plaintiff does not aver that she took any step at all after defendant denied her access to "health, pension and all additional employee benefits." (Am. Compl. ¶ 13.)

Plaintiff's argument that her failure to exhaust administrative remedies may be excused on the grounds that defendant "failed in its fiduciary duty to provide [p]laintiff with and information regarding an appeal process," as required by 29 C.F.R. § 2560.503-1(g), is also unavailing. (Pl.'s Resp. 16.) "[P]rocedural violations of ERISA § 503... require a *procedural remedy*, such as remanding the claim to the administrator for a 'full and fair review.'" Majka v. Prudential Ins. Co. of Am., 171 F. Supp. 2d 410, 416 (D.N.J. 2001) (quoting Russell v. Paul Revere Life Ins. Co., 148 F. Supp. 2d 392, 410 (D. Del. 2001)) (emphasis added); see also Syed v. Hercules Inc., 214 F.3d 155, 162 (3d Cir. 2000). Even if defendant's notice of denial was deficient, "[p]laintiff would not be

permitted to bypass the administrative processes available to her and proceed directly to... [c]ourt." Majka, 171 F. Supp. 2d at 416; see also Grumbine v. Teamsters Pension Trust Fund of Philadelphia & Vicinity, 638 F. Supp. 1284, 1287 (E.D. Pa. 1986); Tomczyscyn v. Teamsters, Local 115 Health & Welfare Fund, 590 F. Supp. 211, 215 (E.D. Pa. 1984).

Accordingly, plaintiff's claim that her failure to exhaust administrative remedies may be excused on the grounds of futility is without merit, and Count VI of the First Amended Complaint must be dismissed.

## V. CONCLUSION

For the forgoing reasons, Defendant's Motion to Dismiss Counts IV Through VI of the First Amended Complaint is granted with respect to Count V and Count VI, and denied with respect to Count IV.

The issues which led the Court to dismiss Count V and Count VI were raised by defendant in its first motion to dismiss. In an effort to address the problems in the original complaint, plaintiff filed an amended complaint. Under those circumstances, the Court will not grant leave to plaintiff to file a another complaint.

An appropriate Order follows.