# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HEATHER HARDEE-GUERRA, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | NO. 09-1547 |
| SHIRE PHARMACEUTICALS, | : | |
| Defendant. | : | |

DuBOIS, J.                                                    August 25, 2010

## **M E M O R A N D U M**

## I. INTRODUCTION

      This is a discrimination and breach of contract case in which plaintiff, Heather Hardee-Guerra, alleges that defendant, Shire Pharmaceuticals ("Shire"), breached a contract of employment by firing her because of her pregnancy. By Memorandum and Order dated December 18, 2009, the Court granted defendant's motion to dismiss Counts V and VI of the First Amended Complaint. Presently before the Court is defendant's motion for summary judgment on the remaining counts, which allege violation of Title VII, 42 U.S.C. § 2000e-2(a) (Count One), violation of the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k) (Count Two), violation of the Pennsylvania Human Relations Act, 42 P.S. § 955(a) (Count Three), breach of contract, and breach of an implied covenant of good faith and fair dealing (Count Four). For the reasons set forth below, defendant's motion for summary judgment is granted as it relates to Count Four of the First Amended Complaint, but denied as it relates to the other counts. In addition, the Court applies the doctrine of judicial estoppel to

preclude plaintiff from seeking compensatory relief in this action. Plaintiff may seek appropriate equitable relief on the remaining counts relating to discrimination.

## II. BACKGROUND

### A. Plaintiff's Employment and Termination

Hardee-Guerra began working at Shire on September 11, 2006 as a temporary employee provided through the services of Matterhouse Contract Staffing, a workforce staffing company in the business of providing temporary workers to corporate clients like Shire. (Plaintiff's Answer to Mot. for Summ. J. of Def., Shire Pharmaceuticals ¶¶ 21-23; Defendant's Statement of Undisputed Material Facts ¶¶ 21-23) (hereinafter, "Def.'s Stmt." and "Pl.'s Stmt."). As a temporary employee, Hardee-Guerra was assigned to take over the position of recruiting coordinator, which had been left vacant when Shire employee Sandee Slindee went on maternity leave. (Pl.'s Stmt. ¶¶ 20, 26; Def.'s Stmt. ¶¶ 20, 26.) At the time of her placement with Shire, Hardee-Guerra knew that she was a contract employee hired on a temporary basis. (Pl.'s Stmt. ¶ 22; Def.'s Stmt. ¶ 22.) She also knew that her employment was at-will, which she understood to mean that she could be terminated at any time without cause. (Pl.'s Stmt. ¶ 27; Def.'s Stmt. ¶ 27.)

In October 2006, Hardee-Guerra discussed with Gina Meloni, Shire's Director of Global Recruitment, the possibility of obtaining permanent employment at Shire. (Pl.'s Stmt. ¶ 32; Def.'s Stmt. ¶ 32.) That same month, she applied and was interviewed for a position at Shire as a Human Resources Generalist, but was not hired. (Pl.'s Stmt. ¶ 32; Def.'s Stmt. ¶ 32.) By the end of the month, Hardee-Guerra was considering moving to South Carolina. (Pl.'s Stmt. ¶ 34; Def.'s Stmt. ¶ 34.) Megan Murray, Hardee-Guerra's contact at Matterhouse, asked if Hardee-Guerra would instead be interested in extending Matterhouse's staffing arrangement with Shire so that Hardee-

Guerra could remain at Shire. (Pl.'s Stmt. ¶ 34; Def.'s Stmt. ¶ 34.) Meloni also approached Murray and Hardee-Guerra about the possibility of extending Shire's contract with Matterhouse. (Pl.'s Stmt. ¶¶ 33-34; Def.'s Stmt. ¶¶ 33-34.)

In a series of e-mails between Meloni and her subordinate, Doug Page, Meloni asked Page to work with Matterhouse to extend Hardee-Guerra's placement at Shire through September 2007. (Pl.'s Stmt. ¶35; Pl.'s Ex. P-6; Def.'s Stmt. ¶ 35.) On December 28, 2006, Matterhouse issued a "Statement of Work" to Shire extending Hardee-Guerra's potential placement with Shire through September 2007. (Pl.'s Stmt. ¶ 38; Pl.'s Ex. P-7; Def.'s Stmt. ¶ 38.) The document extended Matterhouse's services until September 2007 and provided that Shire could hire Hardee-Guerra as a permanent employee without paying a fee to Matterhouse. (Pl.'s Ex. P-7.)

While away from work on vacation, Hardee-Guerra learned on December 25, 2006, that she was pregnant. (Pl.'s Stmt. ¶ 36; Def.'s Stmt. ¶ 36.) She told her co-workers the news when she returned to work on January 3, 2007. (Pl.'s Stmt. ¶ 36; Def.'s Stmt. ¶ 36.) That same day, she signed a letter prepared by Matterhouse explaining the terms of her employment. (Pl.'s Stmt. ¶ 40; Def.'s Stmt. ¶ 40.) The letter explained that Hardee-Guerra would continue to provide services to Shire Pharmaceuticals as a Contract Recruitment Coordinator through September 30, 2007. (Def.'s Ex. D-6.) The letter also stated that "[e]ither party may terminate this agreement at anytime without notice. You shall not be liable to provide the consulting services beyond such notice period." (Def.'s Ex. D-6.)[1]

On May 5, 2007, Hardee-Guerra applied for a job with Kelly Services, another a workforce

---

[1] Plaintiff identified several errors in the Matterhouse letter at her deposition, none of which are relevant to the Court's decision. The parties agree that the letter was signed on January 3, 2007.

staffing company that, like Matterhouse, provided contract employment services to Shire. (Pl.'s Stmt. ¶¶ 48-49; Def.'s Stmt. ¶¶ 48-49.) Hardee-Guerra applied for the job with Kelly Services because Kelly Services, unlike Matterhouse, provided its employees with benefits such as health insurance. (Pl.'s Stmt. ¶¶ 46-50; Def.'s Stmt. ¶¶ 46-50.) In her application, she noted that she was a temporary employee. (Def.'s Ex. D-18.)

Later in May, the position of Senior Operations Specialist at Shire became vacant. (Pl.'s Stmt. ¶ 55; Def.'s Stmt. ¶ 55.) Hardee-Guerra told Kim Chiazza, Shire Recruitment Manager, that she was interested in the position. (Pl.'s Stmt. ¶ 56; Def.'s Stmt. ¶ 56.) Shortly thereafter, Hardee-Guerra experienced complications with her pregnancy that forced her to take several days off of work. (Pl.'s Stmt. ¶ 57). She submitted an application for the position sometime between June 11 and June 13, 2007, after returning from pregnancy leave. (Pl.'s Stmt. ¶ 56). However, by the time Hardee-Guerra returned from her pregnancy leave, the position had already been filled by Jon Walk, a contract employee who had been providing work to Shire through another contract staffing company, TWC. (Pl.'s Stmt. ¶ 57; Def.'s Stmt. ¶ 57.) Just a few days later, on June 19, 2007, David Brinkman—Shire's new Global Recruiting Director—and Chiazza informed Hardee-Guerra that she was being terminated because there was not enough work for a temporary employee, even though Hardee-Guerra had worked fifty three hours at home the previous week while on pregnancy leave. (Pl.'s Stmt. ¶ 59; Def.'s Stmt. ¶ 59.)

### B. Plaintiff's Administrative and Bankruptcy Proceedings

Hardee-Guerra cross-filed with the United States Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") complaints against Shire Pharmaceuticals on October 19, 2007 and against Kelly Services and Matterhouse

Contract Staffing on December 17, 2007. Each complaint alleged that Hardee-Guerra was unlawfully discriminated against because of her pregnancy in violation of Title VII and the Pennsylvania Human Relations Act. (Pl.'s Stmt. ¶ 6; Def.'s Stmt. ¶ 6.)

On February 22, 2009, Hardee-Guerra, through an attorney, filed a bankruptcy petition under Chapter 13 of the United States Code in the United States Bankruptcy Court for the District of South Carolina. (Pl.'s Ex. A; Def.'s Ex. D-37.) In her bankruptcy petition, Hardee-Guerra listed assets of $40,230 and liabilities of $168,593.76, including $22,437 in secured debt and $146,156.76 in unsecured debt. (Pl.'s Ex. A; Def.'s Ex. D-37.) On Schedule B, listing her personal property and attached to her petition, Hardee-Guerra did not list as assets her pending suits against Kelly Services, Matterhouse, and Shire. (Pl.'s Stmt. ¶ 2; Def.'s Stmt. ¶ 2.) A Statement of Financial Affairs, also attached to the petition, directed Hardee-Guerra to "[l]ist all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case." (Pl.'s Ex. A; Def.'s Ex. D-37.) Hardee Guerra listed no such proceedings, despite having received a "right to sue" letter from the Pennsylvania Human Relations Commission on February 11, 2009, stating that she had the right to file a suit against Shire. (First Am. Compl. ¶ 6.) Just a few months earlier, on December 23, 2008, she had received a letter from the Commission explaining that the investigation into her complaint against Kelly Services was still active. (Def.'s Ex. 33.) On February 26, 2009, she received a "right to sue" letter from the Commission regarding her complaint against Matterhouse. (Def.'s Ex. D-30.)

On April 8, 2009, Hardee-Guerra, through an attorney, amended her Schedule F, a list of unsecured creditors, to include ten additional creditors and an additional $4,561.79 in unsecured debt. (Def.'s Ex. D-38.) The next day, on April 9, 2009, through separate counsel, Hardee-Guerra

filed her Complaint against Shire in this Court. On September 22, 2009 she filed a Notice of Plan Modification with the bankruptcy court, under the terms of which she would pay $24,084 over five years and avoid approximately $140,000 of unsecured debt. (Pl.'s Stmt. ¶¶ 14-15; Def.'s Stmt. ¶¶ 14-15; Def.'s Ex. D-39.) The bankruptcy court approved Hardee-Guerra's plan on November 2, 2009. (Pl.'s Stmt. ¶ 16; Def.'s Stmt. ¶ 16; Def.'s Ex. D-36.)

Hardee-Guerra never disclosed to the bankruptcy court or the bankruptcy trustee the existence of her lawsuit against Shire. (Pl.'s Stmt. ¶ 17; Def.'s Stmt. ¶ 17.) On this issue, in interrogatories sent to Hardee-Guerra, Shire asked if she had "even been a party to any other legal proceeding of any kind." (Def.'s Ex. D-26). She responded that "[p]aintiff has not been involved in any other legal proceedings." (Def.'s Ex. D-26.)

## III. LEGAL STANDARD

In considering a motion for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claim. Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). After examining the evidence of record, a court should grant summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and genuine when "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "Where the record taken as a whole could not lead a rational trier to fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

When a party moves for summary judgment on an affirmative defense, "it would bear the burden of proof at trial and therefore must show that it has produced enough evidence to support the findings of fact necessary to win." El v. Se. Pennsylvania Transp. Auth., 479 F.3d 232, 237 (3d Cir. 2007).

## IV. DISCUSSION

Defendant seeks summary judgment on the remaining Counts of Hardee-Guerra's First Amended Complaint: breach of contract, violation of Title VII, violation of the Pregnancy Discrimination Act, and violation of the Pennsylvania Human Relations Act. It also seeks summary judgment on its affirmative defense of judicial estoppel. The Court addresses each in turn.

### A. Count IV: Breach of Contract and Implied Covenant of Good Faith and Fair Dealing

There were two written contractual arrangements in this case. The first was a Client Services Agreement, signed by representative of Matterhouse and Shire on June 7, 2006, setting forth the general terms by which Matterhouse would provide temporary employees to Shire. (Pl.'s Ex. P-16.) Pursuant to this agreement, Matterhouse issued a separate "Statement of Work" on December 28, 2006, explaining the terms of Hardee-Guerra's individual employee placement with Shire. (Pl.'s Stmt. ¶ 38; Pl.'s Ex. P-7; Def.'s Stmt. ¶ 38.) The second contractual arrangement, consisting of a January 3, 2007 letter issued by Matterhouse and signed by Hardee-Guerra, explained the terms of

Hardee-Guerra's employment with Matterhouse, including the details regarding her placement with Shire. (Def.'s Ex. D-6.) Hardee-Guerra concedes that she had no written employment contract with Shire but argues that (1) she was nevertheless an employee of Shire, not Matterhouse, and (2) according to an oral contract communicated through Gina Meloni, she was not an at-will employee and was, instead, given a defined period of employment. She also contends that the contract created an implied covenant of good faith and fair dealing that was breached when she was terminated.

To state a claim for breach of contract, Pennsylvania law requires a plaintiff to establish: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003) (citing CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). "It is fundamental contract law that one cannot be liable for a breach of contract unless one is a party to that contract." Electron Energy Corp. v. Short, 597 A.2d 175, 177 (Pa. Super. Ct. 1991) (citing Viso v. Werner, 369 A.2d 1185 (Pa. 1977)). "Every contract imposes on each party a duty of good faith and fair dealing in its performance and enforcement." Kaplan v. Cablevision of PA, Inc., 671 A.2d 716, 721-722 (citing Restatement (Second) of Contracts § 205).

Pennsylvania "presumes all employment to be at-will." Scully v. US WATS, Inc., 238 F.3d 497, 505 (3d Cir. 2001) (citing Geary v. U.S. Steel Corp., 319 A.2d 174, 176 (Pa. 1974) and Scullion v. EMECO Indus., Inc., 580 A.2d 1356, 1358 (Pa. Super. Ct. 1990)). This means that, "absent a statutory or contractual provision to the contrary, it is presumed that either party may end an employment relationship at any time, for any or no cause." Murray v. Commercial Union Ins. Co., 782 F.2d 432, 434 (3d Cir. 1986) (citing Geary, 319 A.2d at 176). "The party attempting to overcome the presumption must show clear and precise evidence of an oral employment contract for

a definite term. Evidence of a subjective expectation of a guaranteed employment period, based on employer practices or vague employer superlatives, is insufficient." Scully, 238 F.3d at 505 (internal citations omitted).

Assuming, *arguendo*, that Hardee-Guerra was an employee of Shire, her claim for breach of contract nevertheless fails unless she can rebut the presumption that she was an at-will employee. Hardee-Guerra contends that Meloni orally offered her a position at Shire for a defined period of time and that this oral contract was memorialized in a letter, issued by Matterhouse and signed by Hardee-Guerra on January 3, 2007. (Mem. in Support of Pl.'s Ans. to Shire Pharmaceuticals Mot. for Summ. J. 11-12.) The evidence demonstrates otherwise. Hardee-Guerra's affidavit states that Meloni promised to extend Shire's contract with Matterhouse so that Hardee-Guerra could continue providing contract services to Shire. (Affidavit of Heather Hardee-Guerra ¶ 13.) The fact that Shire and Matterhouse contracted to make Hardee-Guerra available through September 30, 2007 does not, *ipso facto*, lead to the conclusion that Shire was guaranteeing Hardee-Guerra employment until that date. In fact, the letter from Matterhouse memorializing Hardee-Guerra's conversations with Meloni states that "[e]tiher party may terminate this agreement at anytime without notice. You shall not be liable to provide the consulting services beyond such notice period." (Def.'s Ex. D-6.) Moreover, as a recruiting coordinator, Hardee-Guerra was familiar with Shire's employment policies. She testified at her deposition that she knew that Shire was an at-will employer and that, in its standard offer letter, Shire always communicated its at-will policy. (Hardee-Guerra Dep. 31-34.)

The evidence further shows that, even after Hardee-Guerra signed the letter with Matterhouse on January 3, 2007, she believed herself to be a temporary employee. The application for employment with Kelly Services that Hardee-Guerra signed on May 2, 2007, contained a section

entitled "Preferences, Work Type." (Def.'s Ex. 18). Hardee-Guerra checked off the boxes for "temporary", "temporary for hire," and "direct hire." When asked why she did so at her deposition, she responded "Well, I was temporary at that time, so I needed to check the temporary box." (Hardee-Guerra Dep. 121-122). Although she also stated that she "didn't put too much thought into this application" because she "was already working at Shire," her testimony does not contradict her acknowledgment that she was still a temporary employee at Shire when she filled out the application in May 2007. That same application stated that "[t]he term of employment with Kelly is not guaranteed. Kelly or I may end the employment relationship at any time, with or without cause, subject to applicable laws." (Def.'s Ex. D-18). It also provided that "[a]s a Kelly employee, I understand that I am not an employee of the customers to whom Kelly assigns me, regardless of any customer statement, conduct, or belief." (Def.'s Ex. D-18). Finally, although Hardee-Guerra alleges in her First Amended Complaint, and argues in her brief, that Meloni promised her full-time employment, when asked at her deposition whether Shire ever promised her a full-time job, she stated that "a promise is a strong word. Insinuation." (Hardee-Guerra Dep. 112.) Such evidence is a far cry from the "clear and precise evidence of an oral employment contract for a definite term" necessary to overcome the presumption of at-will employment. See Scully, 288 F.3d at 505.

No rational trier of fact could conclude, based on the evidence in the record, that Shire made an oral offer to Hardee-Guerra of employment for a defined period of time. Without a contract, Shire cannot be held liable for breach of contract, or for breach of an implied covenant of good faith and fair dealing. Because there are no genuine issues of material fact as to whether Hardee-Guerra was an at-will employee, the Court grants Shire's Motion for Summary Judgment as it relates to Count Four of the First Amended Complaint, in which claims of beach of contract and breach of the

implied covenant of good faith and fair dealing are asserted.

### B. Counts I, II and III: Discrimination

Under Title VII of the Civil Rights Act, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Accord Huston v. Proctor & Gamble Paper Prods., 568 F.3d 100, 104 (3d Cir. 2009). As amended by the Pregnancy Discrimination Act, discrimination "because of sex" or "on the basis of sex" includes discrimination on the basis of pregnancy, childbirth or related medical condition. 42 U.S.C. § 2000e(k). Thus, an employer violates Title VII "wherever an employee's pregnancy [or related medical condition] is a motivating factor for the employer's adverse employment decision." Doe v. C.A.R.S. Protection Plus, Inc., 527 F.3d 358, 364 (3d Cir. 2008).

The framework for evaluating summary judgment motions under Title VII was established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The Supreme Court further explained the framework in Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252 (1981):

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, non-discriminatory reason for the employee's rejection." ... Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

Id. (quoting McDonnell Douglas, 411 U.S. at 802) (citations omitted). Notwithstanding this burden shifting framework, at all times, the ultimate burden of persuading the trier of fact that defendant intentionally discriminated against plaintiff remains with plaintiff. Sarullo v. U.S. Postal Serv., 352

-11-

F.3d 789, 799 n.10 (3d Cir. 2003); Burdine, 450 U.S. at 253. "Employer liability under the Pennsylvania Human Relations Act follows the standards set out for employer liability under Title VII." Knabe v. Boury Corp., 114 F.3d 407, 410 (3d Cir. 1997) (citing Hoy v. Angelone, 691 A.2d 476 (Pa. Super. Ct. 1997)).

### 1. Plaintiff's Prima Facie Case of Discrimination

In order to establish a prima facie case of pregnancy discrimination, plaintiff must show (1) that she is or was pregnant and that her employer knew she was pregnant, (2) that she was qualified for her job, and (3) that she suffered an adverse employment action. See Doe, 527 F.3d at 366.

Defendant argues that Hardee-Guerra cannot establish a prima facie case of pregnancy discrimination because she admits that Jon Walk, the man hired for the vacant Senior Operations Specialist position, had "far better experience" and was "absolutely" the appropriate choice for the position. (Pl.'s Stmt. ¶ 58; Def.'s Stmt. ¶ 58.) In other words, defendant argues that Hardee-Guerra was not qualified for the job—a required element of a prima facie case. This argument misses the mark. Even if Jon Walk was the better candidate for the vacant position, there are genuine issues of material fact as to whether Hardee-Guerra was qualified. Indeed, the evidence in the record shows that she had been performing the duties of Senior Operations Specialist, without difficulty, before Walk was hired. There are also genuine material issues of fact as to why Shire hired Walk while Hardee-Guerra was on pregnancy leave despite the fact that Hardee-Guerra had previously expressed interest in the position.

The evidence is sufficient to establish a prima facie case of pregnancy discrimination. Hardee-Guerra has presented evidence that her employer knew she was pregnant, that she was qualified for the position, and that she suffered an adverse employment action. Shire thus bears the

burden of establishing a legitimate, non-discriminatory reason for terminating her from her position. At this step of the analysis, there are genuine material issues of fact regarding the reasons for Hardee-Guerra's termination and the reason her "Statement of Work" through Matterhouse was extended only through September, 2007—roughly the same time that Hardee-Guerra anticipated giving birth.

On this state of the record, there are genuine material issues of fact regarding Hardee-Guerra's claim of discrimination that preclude granting Shire's Motion for summary judgment. Accordingly, the Court denies the motion as it relates to Counts One, Two and Three, the counts alleging violation of Title VII (as amended by the Pregnancy Discrimination Act) and the Pennsylvania Human Relations Act.

### C. Defendant's Affirmative Defense: Judicial Estoppel

Defendant raises the affirmative defense of judicial estoppel, arguing that summary judgment should be granted on all counts of the First Amended Complaint because Hardee-Guerra failed to disclose her discrimination claims in a contemporaneous bankruptcy proceeding. Hardee-Guerra responds by acknowledging that she failed to disclose her discrimination claims, but contends that she should not be judicially estopped from pursuing those claims because her failure to disclose was not the result of bad faith.

Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, is a "judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding." Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996). The doctrine recognizes the "intrinsic ability of courts to dismiss an offending litigant's complaint without considering the merits of the underlying claims when such dismissal is necessary to prevent

a litigant from playing fast and loose with the courts." Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors, 337 F.3d 314, 319 (3d Cir. 2003).

Judicial estoppel is an "extraordinary remedy" to be invoked in order to stop a "miscarriage of justice"; it is not a "technical defense for litigants seeking to derail potentially meritorious claims." Ryan Operations, 81 F.3d at 356. In determining whether the doctrine should apply, court's look at three criteria:

> First, the party to be estopped must have taken two positions that are irreconcilably inconsistent. Second, judicial estoppel is unwarranted unless the party changed his or her position "in bad faith -i.e., with intent to play fast and loose with the court." Finally, a district court may not employ judicial estoppel unless it is "tailored to address the harm identified" and no lesser sanction would adequately remedy the damage done by the litigant's misconduct.

Krystal Cadillac-Oldsmobile GMC Truck, Inc., 337 F.3d at 319. The party to be estopped must have a meaningful opportunity to provide an explanation for its changed position. Id.

### 1. Inconsistent Positions and Bad Faith

The parties agree that Hardee-Guerra has taken two inconsistent positions. In her bankruptcy petition, she told the court that she had no claims against Shire; here, she assets several claims against Shire, all arising out of her termination in June 2007. Plaintiff argues that the inconsistency is not a product of bad faith. When shown a copy of her bankruptcy petition at her deposition, Hardee-Guerra testified, "I don't even think I have a copy of this." (Hardee-Guerra Dep. 204.) When shown the Schedule B on which Hardee-Guerra omitted mention of her suit against Shire, Hardee-Guerra stated, "honestly, I've never seen this document until today." (Hardee-Guerra Dep. 224.) Although she testified that she reviewed her bankruptcy petition before signing it, she later clarified that she reviewed the information with her attorney and then simply authorized her attorney

-14-

to sign it on her behalf. (Hardee-Guerra Dep. 225.) When asked why she failed to inform the bankruptcy court of her claims against Shire, Hardee-Guerra responded, "because I didn't understand the connection, just like I have not informed by discrimination lawyer about my bankruptcy, because I see them as two separate things." (Hardee-Guerra Dep. 230.)

Defendant argues that bad faith can be inferred from the facts of this case. "[A] rebuttable inference of bad faith arises when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose." Krystal Cadillac-Oldsmobile GMC Truck, Inc., 337 F.3d at 321. The Court agrees with defendants that bad faith can be inferred. The evidence demonstrates that Hardee-Guerra had knowledge of her discrimination claims and a motive to conceal them from the bankruptcy court.

The evidence demonstrates that Hardee-Guerra had knowledge of her claims against Shire while her bankruptcy was pending. On October 19, 2007, she filed with the PHRC and EEOC a discrimination complaint against Shire. While that complaint was pending, she filed for bankruptcy on February 22, 2009, and was asked to list *all* suits and administrative proceedings to which she was a party. (Pl.'s Ex. A; Def.'s Ex. D-37.) In her response, she did not list the proceedings before the PHRC and EEOC despite having received a "right to sue" letter from the PHRC just eleven days earlier, on February 11, 2009. Even more telling is the fact that Hardee-Guerra amended her Schedule F in the bankruptcy proceeding—informing the bankruptcy court of additional creditors, but not the discrimination case—on April 8, 2009, just before filing her Complaint against Shire in this Court on April 9, 2009. Hardee-Guerra also filed her First Amended Complaint in this case on September 1, 2009, approximately three weeks before filing her Notice of Plan Modification with the bankruptcy court on September 22, 2009. This evidence establishes that Hardee-Guerra had

knowledge of her claims against Shire while participating in bankruptcy proceedings.

Moreover, Hardee-Guerra knew that her claims against Shire had a potential monetary value, even if she did not know what that exact value might be. (Hardee-Guerra Dep. 228-229.) As a person seeking to discharge her debts in bankruptcy, Hardee-Guerra had a clear motive to conceal her discrimination case from her creditors. Cf. Clark v. Strober-Haddonfield Group, Inc., No. 07-910, 2008 WL 2945972, at * 3 (D.N.J. July 29, 2008) (concluding that litigant proceeding *pro se* in both bankruptcy and subsequent discrimination suit had a motive to conceal the existence of his discrimination claims); Castillo v. Coca-Cola Bottling Co. of E. Great Lakes, No. 06-183, 2006 WL 1410045, at *3 (E.D. Pa. May 22, 2006) (concluding that plaintiff had a motive to conceal his discrimination claim because "if the claim were made an asset of the bankruptcy estate, any proceeds would be made available to his creditors.")

Hardee-Guerra—provided with an adequate opportunity to respond to defendant's affirmative defense of judicial estoppel at her deposition and in her brief responding to defendant's motion for summary judgment—seeks to rebut the inference of bad faith by claiming that she was unaware that the discrimination complaint she cross-filed with the Pennsylvania Human Relations Commission and the United States Equal Employment Opportunity Commission had anything to do with her bankruptcy. But the Statement of Financial affairs submitted to the bankruptcy court did not ask Hardee-Guerra to disclose "related" legal proceedings; it asked her to list "*all* suits and *administrative proceedings* to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case," and she did not list her discrimination case. (Pl.'s Ex. A; Def.'s Ex. D-37 (emphasis added).) Likewise, Shire's interrogatory asked if Hardee-Guerra had "ever been a party to any other legal proceeding of any kind," and she said nothing about the

bankruptcy in her answer. (Def.'s Ex. D-26). These questions did not require Hardee-Guerra to know that there was any relationship between her discrimination case and her bankruptcy proceeding—they asked her about all legal proceedings of any kind. Under these circumstances, Hardee-Guerra's plea of ignorance is unavailing. Cf. Castillo, 2006 WL 1410045, at *3 (ruling that plaintiff had not rebutted inference of bad faith, even though plaintiff claimed to not understand the requirements of the bankruptcy code, because plaintiff did not explain "how, aided by counsel, he could have misunderstood a direct question as to whether he was a party in an administrative action.")

Indeed, other courts have had no difficulty applying the doctrine of judicial estoppel in similar situations. In Cannon-Stokes v. Potter, a litigant argued that she did not act in bad faith when she failed to disclose legal claims in bankruptcy court because she was relying on the advice of her lawyer. 453 F.3d 446, 449 (7th Cir. 2006). The Court rejected this argument, noting that whether the bankruptcy fraud was the suggestion of the litigant's lawyer, some other lawyer, or her own idea did not matter:

> The signature on the bankruptcy schedule is hers. The representation she made is false; she obtained the benefit of a discharge; she has never tried to make the creditors whole; now she wants to contradict herself in order to win a second case. Judicial estoppel blocks any attempt to realize on this claim for her personal benefit.

Id.

Eastman v. Union Pacific Railroad Company, 493 F.3d 1151 (10th Cir. 2007) is even more persuasive because in that case, as here, the litigant had different attorneys for his personal injury and bankruptcy cases. In Eastman, the litigant, Gardner, had a personal injury claim against a railroad and filed for bankruptcy while those claims were pending. Id. at 1153. Gardner failed to

disclose his claims to the bankruptcy court despite being asked by the bankruptcy trustee if he had any outstanding personal injury claims. Id. The district court held that Gardner was judicially estopped from pursuing his personal injury claims. Id. at 1154-55. On appeal, Gardner argued that he did not act in bad faith because he was an unsophisticated layman relying on educated professionals to file the right papers. Id. at 1157. The United States Court of Appeals for the Tenth Circuit concluded that ignorance was no excuse: "A large portion of debtors who file for chapter 7 bankruptcy surely are as 'unsophisticated' and 'unschooled' as Gardner, yet have little difficult fully disclosing their financial condition to the bankruptcy court. Gardner's assertion that he simply did not know better and his attorney 'blew it' is insufficient to withstand application of the doctrine." Id. at 1159; see also Barger v. City of Cartersville, Georgia, 348 F.3d 1289 (11th Cir. 2003) (applying judicial estoppel to plaintiff's civil rights claim even though plaintiff told his bankruptcy attorney about it).

Defendant has produced sufficient evidence to trigger the presumption that Hardee-Guerra acted in bad faith when she failed to disclose the existence of her discrimination case to the bankruptcy court. Based on the evidence in the record, no reasonable jury could find that Hardee-Guerra has rebutted this inference. There are no genuine issues of material regarding whether Hardee-Guerra failed to disclose her suits in bad faith. Accordingly, because the parties agree that Hardee-Guerra's position in this suit is inconsistent with her position in the bankruptcy court, the doctrine of judicial estoppel may be applied so long as it is "tailored to address the harm identified and no lesser sanction would adequately remedy the damage done by the litigant's misconduct," an issue to which the Court now turns. Krystal Cadillac-Oldsmobile GMC Truck, Inc., 337 F.3d at 319 (internal quotation marks omitted).

### 2. Appropriateness of Applying Judicial Estoppel

The Court has concluded that there are no genuine issues of material fact regarding whether Hardee-Guerra took inconsistent positions in two legal proceedings in bad faith. Even so, the remedy of judicial estoppel is an "extraordinary" one that should "only be applied to avoid a miscarriage of justice." Id. Here, the potential miscarriage of justice was inflicted upon Hardee-Guerra's unsecured creditors, who did not receive the money they might have been entitled to had Hardee-Guerra informed them of her pending discrimination suit. In Krystal Cadillac-Oldsmobile GMC Truck, Inc., the Court noted that creditors are harmed when assets are not disclosed and that "the impact of this nondisclosure must be measured in more than monetary terms. Such nondisclosures affect creditors' willingness to negotiate their claims and enhance the debtor's bargaining position by making the pot that creditors look to for recovery appear smaller than it really is." 337 F.3d at 325.

In this case, as in Krystal, the failure to disclose a valuable asset resulted in a harm to creditors that cannot be repaired. For this reason, the Krystal court rejected as a "lesser sanction" the option of requiring the plaintiff to pay her unsecured debtors the balance of their claims out of any recovery because doing so "would reward [plaintiff] for what appears to be duplicitous conduct in the course of its bankruptcy proceeding." Id. Allowing recovery would also allow plaintiff to reap the benefit of any recovery beyond the amount paid to satisfy her creditors. Id. And, perhaps most importantly, the integrity of both the bankruptcy and judicial processes would suffer. Id.

Although the Krystal court determined that dismissal of plaintiff's complaint was the only sanction that could preserve the integrity of the earlier proceedings, such a drastic remedy in this case is inappropriate for at least two reasons. First, plaintiff's First Amended Complaint raises a viable

claim of discrimination. Resolving this claim is necessary to vindicate society's compelling interest in enforcing anti-discrimination laws. See Castillo, 2006 WL 1410045, at *4. Second, plaintiff asks for declaratory and equitable relief that would have added no value to the bankruptcy estate. Leaving open the option of equitable (i.e., non-monetary) relief allows plaintiff to protect her rights under federal and state anti-discrimination laws without rewarding her for her failure to disclose her discrimination suit to the bankruptcy court. Id.; see also Barger, 348 F.3d at 1297; Clark, 2008 WL 2945972, at *3. The Court concludes that the purpose of judicial estoppel—deterrence against manipulation of the judicial process—is served by barring Hardee-Guerra from pursuing her claims for compensatory damages. while allowing her to seek appropriate equitable relief.

**V. CONCLUSION**

The evidence presented demonstrates that Hardee-Guerra did not have an oral employment contract with Shire guaranteeing employment for a defined period of time. There are no genuine issues of material fact as to that issue and, accordingly, the Court grants defendant's motion for summary judgment as it relates to Count IV of the First Amended Complaint. Defendant's motion for summary judgment is denied as it relates to Counts I, II and III of the First Amended Complaint. On those claims, there exist genuine material issues of fact as to whether Hardee-Guerra was discriminated against because of her pregnancy. The Court will apply the doctrine of judicial estoppel to bar plaintiff from seeking compensatory damages in this action. Plaintiff may, however, seek appropriate equitable relief, as well as a declaratory judgment that defendant violated her rights under federal and state anti-discrimination laws.

An appropriate order follows.